J-A14005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUJUAN ANDRE JACKSON | : | |
| | : | |
| Appellant | : | No. 741 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 28, 2018
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s):  CP-37-CR-0000017-2017

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                     **FILED JANUARY 22, 2021**

Appellant, Jujuan Andre Jackson, appeals from the judgment of sentence entered on November 28, 2018, in the Court of Common Pleas of Lawrence County.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> On May 9, 2015, Sergeant Brian Cuscino was notifified of a shooting involving the victim Hygeia Moss-Eggleston.  After conducting an initial investigation, the victim as well as other witnesses stated [Appellant] perpetrated the shooting.
>
> Prior to the shooting, there was a personal conflict, which was not physical, between Julian Eggleston and [Appellant] that afternoon.  [Appellant] called his girlfriend, whose cell phone was the subject of the dispute, and indicated an express desire to further escalate the conflict.  When Julian Eggleston and his children returned home later that day, [Appellant] possessed a handgun and sought out Eggleston at his own home.  Witness testimony from multiple individuals presented at trial indicates [Appellant] was observed walking up the street toward the

Eggleston residence where Julian Eggleston was standing on the porch, talking to his sister who was next door visiting. [Appellant] walked to an area a short distance from the porch to the Eggleston home. He then revealed a concealed handgun and fired the weapon towards Julian Eggleston, who was standing on the porch. His wife, Hygeia Moss-Eggleston, who had come out onto the porch to see what was occurring, was injured during the gunfire. It was not ascertained whether the injury was caused by a ricocheting bullet or a fragment from another object, which the bullet struck.

[Appellant] was charged with Criminal Attempt to Commit Criminal Homicide;[3] Aggravated Assault of Julian Eggleston;[4] Aggravated Assault of Hygeia Moss-Eggleston;[5] and Firearms not to be Carried Without a License.[6] The additional charge of Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms[7] was severed and presented to this [c]ourt as a bench trial. The jury submitted its verdict on September 21, 2018. The jury was hung as to the charge of Criminal Attempt to Commit Criminal Homicide, and a mistrial was declared. The jury convicted [Appellant] of the following charges: two counts of Aggravated Assault and one count of Firearms Not to be Carried Without a License. After a bench trial, the [c]ourt rendered its verdict on September 21, 2018. This [c]ourt found [Appellant] guilty on the charge of Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms. On November 27, 2018, [Appellant] was sentenced to a term of incarceration in a State Correctional Facility of not less than 21-1/2 years nor more than 55 years, and he was given credit for 748 days already served.

[3] 18 Pa.C.S.A. § 901 applying 18 Pa.C.S.A. § 2501[.]
[4] 18 Pa.C.S.A. § 2702(a)(1)[.]
[5] Id.
[6] 18 Pa.C.S.A. § 6106(a)(1)[.]
[7] 18 Pa.C.S.A. § 6105(a)(1)[.]

[Appellant] filed a Motion for Post-Sentence Relief, which raised challenges to the weight and sufficiency of the evidence presented at trial. The Motion also requested additional time to supplement the motion, which this [c]ourt allowed. In the Brief in Support of the Motion, [Appellant] asked this [c]ourt to review its previous Order dismissing his pretrial Motion to Dismiss based on Rule 600. The Brief in Support does not mention the weight

and sufficiency claims. On April 17, 2019, this [c]ourt issued an Order denying [Appellant's] Motion for Post-Sentence Relief.

Trial Court Opinion, 7/18/19, at 2-3 (some footnotes omitted). Appellant filed his notice of appeal on May 15, 2019. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I.    Was the jury verdict of guilty against the weight of the evidence presented at trial?

II.   Was the jury verdict of guilty supported by sufficient evidence[?]

III.  Whether the trial court denying [Appellant's] Motion to Dismiss pursuant to Rule 600 was an abuse of discretion.

IV.   Whether the trial court's sentence was a palpable abuse of discretion.

Appellant's Brief at 6.

We shall address Appellant's first two issues together. In addressing Appellant's claims of weight and sufficiency of the evidence, the trial court made the following statement:

The [c]ourt must first address the absence of transcripts of the trial from the record. On December 7, 2018, a Preliminary Order was filed in which the Lawrence County Stenographer's Office [was] to prepare the trial and sentencing transcripts. [Appellant] failed to request or pay for the trial transcripts, as required by Pa.R.A.P. 1911(a), which states, "The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 4001 et seq. of the Pennsylvania Rules of Judicial Administration." Id. . . . . It is a well-recognized principle of law that an [a]ppellant and his lawyer are obligated to identify and order the necessary transcripts to prosecute an appeal, reasoning "they are in the best

position to know what they actually need for appeal, and are responsible to take affirmative actions to secure transcripts and other parts of the record." Com. v. Lesko, 15 A.3d 345, 410 (Pa. 2011). The lack of trial transcripts hindered the [c]ourt in fully addressing the weight and sufficiency of the evidence arguments.

Trial Court Opinion, 7/18/19, at 3-4.

It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review his claims. **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty."). "It is a well settled principle that appellate courts may only consider facts which have been duly certified in the record on appeal. Where a claim is dependent upon materials not provided in the certified record, that claim is considered waived." **Commonwealth v. Proetto**, 771 A.2d 823, 834 (Pa. Super. 2001) (citations omitted).

Regarding missing transcripts, this Court has stated that it "is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts." **Preston**, 904 A.2d at 7. Rather, "the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal.

Pa.R.A.P.1911(a)." *Id.* We may dismiss an appeal when the appellant fails to comply with Rule 1911. Pa.R.A.P. 1911(d).

The certified record reflects that the trial transcripts are not included. Appellant has inserted the trial transcripts in the reproduced record. However, this does not remedy Appellant's failure to ensure the presence of all of the transcripts in the certified record. "[A]n appellate court is limited to considering only the materials in the certified record when resolving an issue." *Preston*, 904 A.2d 1, 6-7 (Pa. Super. 2006). "In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. *Id.* at 6. Appellant's challenges to the weight and sufficiency of the evidence supporting his convictions require reference to the transcripts. The absence of the transcripts from the certified record is fatal to his claim. Moreover, Appellant's production of these transcripts in the reproduced record does not cure this defect. The trial court did not have the benefit of the trial transcripts in reviewing Appellant's claims when such claims were before it. Thus, the challenges are waived, and Appellant is due no relief on his first two issues.

In his third issue, Appellant argues that the trial court abused its discretion in denying his Motion to Dismiss pursuant to Pa.R.Crim.P. 600.

Appellant's Brief at 35. Appellant maintains that the New Castle Police Department ("NCPD") was aware that Appellant frequently traveled to Detroit to see family and would live there for periods. *Id.* at 37. Appellant contends that the NCPD knew the Detroit address. *Id.* Appellant asserts that despite knowing this, the NCPD failed to diligently pursue contact with him. *Id.* at 37-40. Thus, Appellant argues that the Commonwealth failed to establish due diligence in locating and apprehending Appellant and therefore, failed to carry its burden justifying the length of delay in bringing the case to trial. *Id.* at 40-50.

Our standard and scope of review of a trial court's denial of a motion to dismiss pursuant to Pa.R.Crim.P. 600 is as follows:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. The proper scope of review in determining the propriety of the trial court[']s ruling is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the lower court. In reviewing the determination of the hearing court, an appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Cook*, 865 A.2d 869, 875 (Pa. Super. 2004).

> [T]he courts of this Commonwealth employ three steps— corresponding to Rules 600(A), (C), and (G)—in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.
>
> If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600(G). As we have

explained, Rule 600(G) encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600(G) extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1103 (Pa. Super. 2007).

"Excusable delay" is a "legal construct" that "takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence." Our Supreme Court has made clear that the Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time. Moreover, the Commonwealth bears the burden of proving that its efforts were reasonable and diligent.

Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, among other things, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600.

*Ramos*, 936 A.2d at 1102-1103 (internal citations and some quotation marks omitted).

The trial court thoroughly addressed this claim in its Pa.R.A.P. 1925(a) opinion. The trial court outlined in detail the many efforts made by the NCPD in attempting to locate and apprehend Appellant. Trial Court Opinion, 7/18/19, at 7-19. The trial court explained that the complaint was filed on May 12, 2015, and the mechanical run-date of 365 days was May 11, 2016. *Id.* at 10. The trial court also noted that "[Appellant] concedes efforts made

by the investigating officers after July 7, 2016, were the product of due diligence and may be considered excusable delay. The period of time in contention is May 9, 2015, to July 7, 2016." ***Id.***

The trial court conducted a complete analysis of the days beyond the mechanical run-date and considered whether those efforts were reasonable and diligent. In summarizing the many pages in which it had outlined specific actions taken by the NCPD, the trial court stated:

> Officers contacted individuals in the Detroit area with regard to [Appellant's] information. The Detroit contacts engaged in 'spot checks' of [Appellant's] possible location. Police in New Castle engaged in surveillance of [Appellant's] local contacts when it was possible to do so, balancing that time with other police activities. Sergeant Cuscino testified he made contact with security at a Liberty Mutual location [where Appellant's girlfriend] worked and informed them of their interest in [Appellant] if he were to appear. That location was surveilled as part of the search for [Appellant]. In addition to these in-person surveillance activities, a warrant was issued for [Appellant's] arrest, his information was entered into the NCIC database, and a post was made on a Facebook page maintained by the NCPD. Sergeant Cuscino notified numerous local jurisdictions to be aware of [Appellant]. This notification included informing out of state and out of county jurisdictions where [Appellant] had previous contact. The investigating officers obtained search warrants for [Appellant's] known phone numbers. While this monitoring was unsuccessful, they also had information he would change his phone extremely frequently in order to avoid tracking.

Trial Court Opinion, 7/18/19, at 18. As such, the trial court concluded that the Commonwealth's investigation was performed with due diligence, and the remaining time beyond the mechanical run-date was excusable for the purposes of Rule 600. ***Id.*** at 19.

We agree with the trial court's conclusion. The evidence of record reflects that the time beyond the mechanical run-date was an excusable delay because the Commonwealth's efforts in bringing Appellant to trial were reasonable and reflected due diligence. The trial court did not abuse its discretion in denying Appellant's motion to dismiss on the basis of Pa.R.Cim.P. 600. Appellant is entitled to no relief on this claim.

In his final issue, Appellant argues that the sentence imposed by the trial court was a "palpable abuse of discretion." Appellant's Brief at 50. Appellant maintains that the sentencing court erred when it sentenced him in the aggravated range of the Sentencing Guidelines by relying on an "impermissible consideration." *Id.* at 52. Appellant claims this "impermissible consideration" was the "fact" that he had a prior robbery conviction that allegedly involved a gun, although this "fact" was "unsupported by any evidence of record." *Id.* at 52. As such, Appellant challenges the discretionary aspects of his sentence. *Id.* at 50-52.

Appellant has failed to raise any challenge to his sentence in his Pa.R.A.P. 1925(b) statement. Thus, this claim is waived. "Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived." ***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011) (quoting ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998)). Furthermore, Appellant failed to preserve his sentencing claim at the time of sentencing or by raising it in his post-sentence motion. "[I]ssues challenging the

discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*). Appellant's final issue is waived on this basis as well.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/22/2021